**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **HENRY KMIEC** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. _____** |
| | § | |
| **HARRIS COUNTY, UNIVERSITY OF** | § | **JURY TRIAL DEMANDED** |
| **TEXAS MEDICAL BRANCH ("UTMB"),** | § | |
| **TEXAS DEPT. OF CRIMINAL JUSTICE,** | § | |
| **AND OFFICER SANDERS** | § | |
| **Defendants.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**
**UNDER CIVIL RIGHTS ACT, 42 U.S.C. § 1983**

COMES NOW, Henry Kmiec, Plaintiff is the above-styled and numbered cause, and files this OriginalComplaint against Defendants, Harris County, University of Texas Medical Branch ("UTMB"), Texas Department of Criminal Justice ("TDCJ") and Officer Sanders. In support of this claim, Plaintiff would show as follows:

**PARTIES TO THE SUIT**

1.      Plaintiff, in this case, is Henry Kmiec and is appearing in this case by and through the undersigned counsel.

2.      Defendant Harris County is the government entity responsible for the Harris County Sheriff's Office which is in turn responsible for the Harris County Jail where the Plaintiff suffered injuries.  Defendant Harris County may be served with this Complaint by and through Harris County Judge Lina Hidalgo at 1001 Preston, Suite 911, Houston, Texas 77002.

3.      Defendant, University of Texas Medical Branch ("UTMB"), was responsible for the medical care received by Plaintiff. UTMB may be served through it's Chair, Peter Cram, at 301 University Blvd, Galveston, Texas 77555-0569.

4.      Defendant, Texas Department of Criminal Justice (TDCJ) is an agency of the State of Texas to which Brian Collier if the Executive Director may be served with this lawsuit at the Texas Department of Criminal Justice at P.O. Box 99, Huntsville, TX 77342 or 861 A IH 45 North Huntsville, TX 77320.

5.      Defendant Officer Sanders is  an individual employed by the Harris County Sheriff's Department as a Detention Officer and may be served with this lawsuit at the Harris County Sheriff's Department, at 1200 Baker St., Houston, Texas 77002.

## JURISDICTION AND VENUE

6.   The subject matter in controversy is within the jurisdictional limits of this Court. This court has jurisdiction over the parties because Defendants are residents of Texas.

7.      Venue of this case is proper in Harris County, Texas is proper because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in Harris County and Harris County is located in the Southern District.

## III.
## FACTS

8.      This is an action brought by the Plaintiff, Henry Kmiec against Defendants, Harris County, UTMB, TDCJ, and Officer Sanders for the denial of medical attention and inadequate medical attention upon Plaintiff under the color of law in violation of his individual rights under the Fourth Amendment of the United States Constitution and in violation of his civil rights pursuant to 42 U.S.C.§1983.

9.      On or about the night of May 5, 2022, Plaintiff had transported from the Harris County Jail to the hospital due to a hernia.

10.     The morning of May 6, 2022, emergency surgery was done on the hernia.

11.     The evening of May 6, 2022, Harris County picked up Plaintiff from the hospital to transport him back to the Harris County Jail.

12.     Defendant Officer Sanders was one of the Harris County officers who transported Plaintiff. Officer Sanders rode as a passenger in the transport van.

13.     At the time of the transport, Plaintiff was in a wheelchair because he was recovering from the hernia surgery.

14.     When Plaintiff, in his wheelchair, was loaded into the transport van to be returned to the Harris County Jail, the wheelchair was not properly locked into place. Plaintiff was the only person in the van other than the officer driving and Officer Sanders.

15.     A female officer was driving the transport van. It was getting close to 9 pm which is when the officer driving and Officer Sanders were supposed to get off.

16.      Plaintiff knew that it was almost time for the officers transporting him to get off duty, because the guard who wheeled Plaintiff down to the van from the hospital had told him that the transport guards were off at 9, and it was getting close to that time, so he needed to hurry up and get Plaintiff down there.

17.     At one point, the driver of the transport vehicle for an unknown reason, slammed on the brakes.

18.     When the driver slammed on the brakes, Plaintiff flew out of his wheelchair and into the wall of the van that separates the inmates from the officers. Plaintiff lay on the floor of the van, loose, while his wheelchair continuously slammed into his head and body every time that the driver hit the brakes and started driving again. Harris County officers continued to drive on without checking on Plaintiff or putting him back his wheelchair and off the van floor.

Complaint

19.     Plaintiff would estimate that he was left in this position for about 20-30 minutes. They were traveling from the medical center back to the Jail.

20.     Plaintiff noticed that there was a camera pointed toward him in the back of the van. Plaintiff believes that the officers were able to see him back there on the floor.

21.     It was not until they were almost back to the Harris County Jail that the van pulled over and Officer Sanders got out and put Plaintiff back into his wheelchair and locked the wheelchair into place.

22.     Officer Sanders did not ask Plaintiff if he was ok or how he was doing. The officers never acknowledged that Plaintiff had fallen out of the chair.

23.     Once he was back into position, they continued to the jail arriving only minutes later, leaving Plaintiff to assume they had been very near the jail when they finally decided to pull over.

24.     Once Plaintiff was back in jail, the Officers did not mention to anyone that Plaintiff had been left lying on the transport van with his wheelchair hitting him.

25.     Plaintiff had told the passenger, Officer Sanders, that his arm was killing him. He let Officer Sanders know that he was in pain.

26.     No one checked Plaintiff for injuries related to the fall from the chair and slamming into the transport van wall or the chair continuously hitting him.

27.     Plaintiff had been taken to the infirmary by the driver and passenger (Officer Sanders) upon arrival back to the jail. They had placed him in an observation area, and put Plaintiff's file on a desk for follow-up on his hernia surgery. The driver and passenger officers of the van did not tell anyone about the fall.

28.     Plaintiff's arm and neck were in extreme pain. He was stressed because he had also just had surgery for his hernia which required a long incision below the waist (not related to his arm

or neck).

29.     Plaintiff informed the nurse of what had happened and that he was in pain, and she told him that he needed to tell the doctor. The nurse wasn't interested in dealing with Plaintiff.

30.     When Plaintiff told the doctor he was told that he wasn't there for that, he was there for follow-up treatment on the hernia procedure. The doctor only checked on the hernia

31.     Plaintiff was in the infirmary for three-five days recovering from the hernia procedure before he was released back into his cell. In that time, he repeatedly told medical personnel that his arm hurt, his shoulder hurt, and his neck hurt.

32.     No one checked him for injuries or gave him medical attention related to his fall from the wheelchair in the transport van while he was in the infirmary. He was repeatedly told he was only there for the hernia.

33.     Despite Plaintiff complaining about his neck, no x-rays or any other imaging were taken in the days that Plaintiff was in the infirmary.

34.     Once Plaintiff was out of the infirmary and in population, he submitted several sick requests and grievances through the Harris County Jail kiosk trying to get medical attention for his injuries.

35.     After submitting grievances, Plaintiff was visited by officials. He told them about the incident in the van and that he was in pain. They said they would see what they could do, but Plaintiff never heard back.

36.     Out of desperation and to get needed medical attention, approximately 2-3 weeks after Plaintiff had been released from the infirmary,  Plaintiff began to write to the mental health department to try and obtain help. He kept informing them he was in pain and he couldn't sleep.

37.     At this point the mental health grievance officers came to visit Plaintiff and told him

they would try and get him seen when there was an opening. That's all he ever heard from them.

38.     In the second month after the incident, while Plaintiff was still at the Harris County Jail and was at a follow-up appointment for his hernia, Plaintiff again complained about the pain in his neck and shoulder. The doctor finally decided to send Plaintiff for x-rays because Plaintiff's ankle was swollen.

39.     The x-rays revealed that Plaintiff's ankle had been fractured. Plaintiff had been walking on it since the incident, but hadn't been complaining because his neck was hurting about twice as bad as his ankle had been.

40.     The x-rays also showed severe injuries to Plaintiff's neck. The x-ray technician made the comment that he had never seen anything like Plaintiff's neck before.

41.     Plaintiff observed the x-ray and instead of his spine being straight, it looked like it was sitting off to the right, almost as if it was on his shoulder.

42.     Plaintiff did not see the doctor again after the x-rays and continued to write grievances and make medical call requests and no treatment was provided.

43.     At one point, Plaintiff received a letter requesting that Plaintiff not submit any more grievances.

44.     During this time, Plaintiff was having difficulty swallowing food and not chocking unless he had his head turned just right.

45.     Eventually, Plaintiff signed a plea  for two years in order to get out because Plaintiff was in so much pain and no one was medically treating him. Plaintiff spent 4 months in the Harris County Jail. Most of that time was after the injuries. Plaintiff had only been in the jail for 7 days prior to the incident in the transport van.

46.     The only treatment that Plaintiff got for his injuries while at Harris County was some

ibuprofen for the swelling in his ankle and a walker.

47.     After signing for his sentence, Plaintiff was taken to TDCJ's Holiday Unit in Huntsville, Texas. At intake Plaintiff let them know what had happened in the transport van in Harris County and that he was hurting.

48.     Despite Plaintiff telling TDCJ at intake of his injury and that he was still hurting, he was not given a walker or cane to replace the walker that he had been given at Harris County.

49.     As a result of not having a walker or cane, Plaintiff fell while in TDCJ custody.

50.     After intake Plaintiff continuously requested to be seen by medical and reported his pain. In desperation, he also wrote to the TDCJ mental health department.

51.     Appointments would be scheduled but no guard would come get Plaintiff and they would be missed.

52.     One of the mental health providers, Mr. Thomas, finally escorted Plaintiff himself and reprimanded guards for not transporting Plaintiff. It was not Mr. Thomas's job, but he saw that Plaintiff's injuries and requests were continuously ignored.

53.     Finally, after about two months in TDCJ custody, Plaintiff was sent to a doctor to get his neck and spine checked out.

54.     Plaintiff's spine was still injured as was his esophagus. He had nerve damage in his shoulder.

55.     The nerve damage in Plaintiff's shoulder was cause blood to be cut off to Plaintiff's arm and fingers.

56.     After numerous CT's and MRI's, a spine orthopedic UTMB surgeon in Galveston performed a surgical procedure to reconstruct Plaintiff's esophagus the best he could. He tried to alleviate some of the pressure in the pinched nerves.

57.     The surgeon also reconstructed Plaintiff's spine by place two plates and bolts into Plaintiff's spine to keep it straight.

58.     Plaintiff is now out of TDCJ custody, but continues to suffer. He cannot write. He's right-handed and it's his right shoulder and arm that have permanent nerve damage. He has difficulty holding utensils and eating; with shaving and raising his arms. He is unable to work because he has little use of his dominant arm. Plaintiff wants to get his life back into order, but it will never resemble life as he knew it before being in Harris County custody.

59.     Harris County has a pattern and custom of acting with deliberate indifference to the medical needs of inmates, using excessive force, failing to protect, and creating a violent environment that is likely to result in constitutional violations of inmates.

60.     TDCJ has a pattern and custom of acting with deliberate indifference to the medical needs of inmates.

61.     In April 2022, Officers assaulted inmate Elton Spicer for no justifiable reason.

62.     On May 17, 2022,  Harris County Officers failed to protect Joseph Babino, when another inmate, Christopher Fears, who should have been separated from Mr. Babino, boiled water and attacked Mr. Babino resulting in second and third degree burns to his face and torso along with a laceration to his head. Mr. Babino spent *13 days* recovering at Memorial Hermann Hospital as a result of the attack, which would never have occurred if the inmates were separated *as required.*

63.     As recently as February 2024, the excessive violence by Harris County guards continues. A video was released to the public of inmate D'Alessandro Chavez-Sandoval being punched multiple times by several guards.

64.     Cause No. 4:23-cv-02886, filed in the Southern District, represents 22 inmates who either died or suffered serious injuries while in the custody of Harris County from late 2021-mid

2023. The facts of that cause of action and those injuries are incorporated herein as set forth in the Complaint as an example of the ongoing practices and customs of Harris County to violate the constitutional rights of those in its care.

65.     Cause No. 4:23-cv-04366, filed in the Southern District is another related case, wherein an inmate died while in the custody of Harris County. The facts of that cause of action and those injuries are incorporated herein as set forth in the Complaint as an example of the ongoing practices and customs of Harris County to violate the constitutional rights of those in its care.

66.     Harris County Jail's culture of violence and prevalent policies, practices, and customs of failing to provide timely and adequate medical care, the institutionalization of excessive force by jail employees on detainees, and systemic understaffing and overcrowding of the jail were the direct cause and moving force of Mr. Spicer's injuries.

67.     Sheriff Gonzalez was the policymaker for Harris County with respect to the jail when Mr. Spicer suffered his injuries due to the jail's unconstitutional policies, customs, and practices.

68.     Harris County is aware of the deficiencies in medical treatment and serious delays in medical treatment as well as lack of training. The Texas Commission of Jail Standards put Harris County on notice. The image below is from the March 2023 letter to Harris County regarding the violations at the jail.

| 273 | Health Services | Reviewed a random selection of 60 files. Interviews were conducted with staff and inmates. Reviewed training records. Reviewed the policy. **Deficiencies noted. Technical assistance provided. 1.)** During the inspection team's review of medical requests submitted by inmates through the kiosk system, two inmates were not attended by medical staff within 48 hours, as required by the facility's operation plan. A prisoner submitted a medical request through the kiosk on 10-20-2022 for a large growth protruding from his gum line and was not seen by medical staff until 33 days later on 11-22-2022. Despite being referred to dental, the inmate was not seen by dental for 38 days. On 10-4-2022, a second inmate submitted a medical request for a bullet lodged in his neck. The inmate's medical documentation indicates that he was a "no show" for his appointment on 10-7-22. There was no documentation to explain the no-show. The inmate submitted a second request to the medical staff on 10-28-22. However, he was not seen by the medical staff until 10 days later, on 11-7-22 **2.)** In December 2022 the Harris County Jail was placed in non-compliance for failing to follow a physician's orders and provide medication to an inmate as directed. During the Comprehensive Re-Inspection, this was determined to be a continuing issue by the inspection team. **Follow up is required** - HCSO jail staff and the medical provider (Harris Health) shall coordinate to provide a plan of action to the lead inspector within 30 days, to ensure these issues do not occur in the future. |

RECEIVED

MAR 0 8 2023

Texas Commission On
Jail Standards

**TEXAS COMMISSION ON JAIL STANDARDS - INSPECTION REQUIREMENTS REVIEW**

| 273 | Health Services (Continued) | **Technical assistance provided** - During the review of suicide prevention training, it was determined that 6 staff members assigned duties that were required to receive supplemental training in accordance with the approved Mental Disabilities/Suicide Prevention Plan for Harris County (last approved 19 November 2019) and minimum standards had not received the supplemental training. |

## PRE-SUIT DISCOVERY EFFORTS

69.     On February 6, 2024, Plaintiff's counsel made an Open Records Request to obtain the Plaintiff's grievances, video from the transport van and medical requests.

70.     The result of the request was one page stating no grievances were found. The video footage and the medical requests were not provided.

## IV.

## CAUSES OF ACTION

## COUNT 1 – *MONELL* PATTERN-OR-PRACTICE

71.     Plaintiff incorporates by reference the foregoing and succeeding paragraphs as if set forth herein.

72.     A county may be directly liable under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). For such, Plaintiff need only show (A) an official policy or custom, (B) that a policymaker can be charged with actual or constructive knowledge, and (C) a constitutional violation whose moving force is that policy or custom.[1]

*Official policy or custom*

73. An official government policy can be proven in more than one way. It includes: (1) official decisions promulgated by a local government's lawmaking body; (2) longstanding practices so persistent and widespread as to fairly represent government policy or the force of law; and (3) the acts or policies of officials who by law or delegation possess final policymaking authority for the local government concerning the action alleged to have caused the particular constitutional or statutory violation at issue. *See Pembaur*, 475 U.S. at 480-81,106 S.Ct. 1292; *Monell,* 436 U.S. at 691, 98 S.Ct. 2018; *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 167-68, 90 S.Ct. 1598, 26 L.Ed.2d (1970); *Culbertson*, 790 F.3d at 628; *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc).

74.     Harris County has longstanding practices so persistent and widespread as to fairly represent government policy or force of laws that violate detainees constitutional rights as exemplified by the numerous Plaintiffs who have filed suit for injuries or deaths that have occurred while in the custody of Harris County and the deficiencies identified by the Department of Justice.

75.     Sheriff Gonzalez possesses final policymaking authority for Harris County with respect to the Harris County Sheriff's Office which operates the Harris County Jail where the injury occurred.

---

[1] *Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493, 509 (5th Cir. 2022); *Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012); *see also Bartee v. Harris Cty.*, 2018 U.S. Dist. LEXIS 232945 *7-8 (S.D. Tex. 2018); *Releford v. City of Houston*, 2016 U.S. Dist. LEXIS 167749 *9 (S.D. Tex. 2016) (Ellison, K.).

Complaint

76.     Harris County's policies or customs include:

- Harris County's policies, procedures, customs, and practice of not providing appropriate medical care to their detainees, failing to provide medication or medical attention for known medical needs and ongoing complications with injuries received from jail guards and detainees, failing to fully and properly evaluate and diagnose Plaintiffs' injuries and ongoing medical treatment, failing to place Plaintiffs in the appropriate facility in light of their known medical needs, failing to change observation patterns in light of ongoing medical conditions, and falsifying medical treatment and diagnoses resulted in the deliberate indifference to the known and obvious risks which led to the deprivation of the constitutional rights and the injuries

- Harris County's rampant practice and policies of understaffing and overcrowding the jail encouraged violence by officers against detainees, caused additional psychological and physical stresses on officers which leads to violent outbursts directed at detainee's, prevented a  correct proportion of guards to carry out the necessary functions of the jail safely which encourages officers to use the quickest methods to get results out of detainees including excessive violence, makes the employees "overworked, moral is poor, bad decisions happen when [understaffing is] occurring," impedes Plaintiffs' access to medical care, impedes the officers ability to provide medical care timely, impedes the jailer's ability and/or willingness to observe and monitor detainees, impedes the jailer's ability and/or willingness to deter detainee on detainee or officer on detainee violence, reduces the ability of officers to escort detainees safely, and results in insufficient officers to carry out even minute functions of the jail safely, which resulted in the injury of Plaintiff.

- It was highly predictable that Harris County employees would follow these ongoing policies and practices. The known and obvious consequences of Harris County's policies and practices identified above is that detainees would suffer significant injuries and death. The DOJ and TCJS, have all provided notice of these policies and the likely consequences of those policies causing constitutional violations.

- Harris County acted with deliberate, callous, conscious, and unreasonable indifference to Plaintiff's constitutional rights by being aware of the known and obvious consequences of their policies and practices but continuing to authorize, tolerate, and ratify the implementation of the custom and practice resulting in the injury of Plaintiff.

- Each of the policies taken above and in context of each Plaintiffs' injuries were promulgated, enforced, ratified, and created by Harris County's policymakers including Sheriff Gonzalez. Harris County has been aware of these policies, practices, and customs since at least 2009 as shown below.

*Constructive or actual knowledge by policy maker*

77.     Sheriff Gonzalez was aware of the policy or customs of Harris County. On information and belief, there is persistent pattern and number of detainees that have filed grievances regarding the violations and treatment of detainees through the Harris County Jail's Kiosk. The electronic kiosk inside the jail is the the only for detainees to make formal complaints. Due to it's electronic format, detainees have no way to keep a copy of their grievances or track them after they are submitted. A system that aids in hiding the constitutional violations running rampant within the Harris County Jail.

78.     Sheriff Gonzalez as well as Harris County Mayors and Sheriffs prior to Sheriff Gonzalez were made aware of the constitutional failures of the Harris County Jail beginning as early

as 2009 when the Department of Criminal Justice began its investigation into the jail and making reports.[2]

79.    The DOJ report stated: [T]he Jail fails to provide consistent and adequate care for detainees with serious chronic medical conditions. . . .These deficiencies, in themselves and when combined with the problems in medical record-keeping and quality assurance discussed below, are serious enough to place detainees at an *unacceptable risk of death or injury.* (Emphasis added) *Id* at 3.

80.    The DOJ reported that physicians and nurses routinely fill out paperwork incorrectly stating that evaluations were done when in fact they were not completed. *Id* at 4. The Jail lacked sufficient processes to identify detainees with chronic illnesses who were worsening or unwilling to notify the staff of their illness. *Id.*

81.    The DOJ noted that the Harris County Jail's clinic was a "makeshift emergency room" that was insufficient to meet the needs of the thousands of detainees within the Jail. *Id.* at 5–6. The process for requesting care was insufficient "due to crowding, staffing limits, and some problematic practices." *Id*. at 6. Some of these practices include having inadequate oversight for detainee requests for medical care and significant delays in responding to medical requests. Id. In fact, Harris County has the same trend of deleting medical requests after being processed with no confirmation or follow-up to confirm that the medical issue had been resolved. *Id.*

82.    "[T] detainees have a difficult time first accessing the clinic, and then receiving continuity of care." Id.

83.    The DOJ report also put Harris County on notice regarding overcrowding exacerbating the problems in the Jail. Specifically, it was noted "The Texas Jail Commission's decision to grant

---

[2] Plaintiff asks the Court to take judicial notice of the Department of Justice report from June 4, 2009 ("DOJ Report").

the County waivers to house approximately 2000 detainees more than the Jail's original design capacity is concerning on its face….. (1) the Jail's crowded conditions currently exacerbate many of the constitutional deficiencies identified in this letter; and (2) the Jail needs a more comprehensive, systemic approach to dealing with a large and growing Jail population." (pg. 17).

84.     Despite the DOJ report being made in 2009, the same problems continue to persist. It was recently reported that "Back in September 2022, the Texas Commission on Jail Standards determined the Harris County Jail was violating statewide safety standards — a determination that's held true for more than a year now. Among the plethora of violations, commission found that the jail wasn't providing timely medical care and was struggling to maintain the state-mandated staffing ratio of one detention officer for every 48 persons held in the jail.(https://www.tcjs.state.tx.us/non-compliant-jails/)" [3]

85.     It was also reported that "Since December, the Texas Commission on Jail Standards has been reducing the Harris County Jail's approved capacity by 144 beds each month in response to persistent understaffing." *Id.*

86.     Alarmingly, 19 people died in the Harris County Jail in 2023, and 27 died in 2022, "the highest number in nearly two decades, according to county records and data from the Texas Justice Initiative." *Id.*

87.     As previously stated, the TCJS continued to note that there were deficiencies in the health services at the Harris County Jail in it's March 2023 letter to Harris County. The same type of deficiencies that were noted in the 2008 DOJ report.  This is a problem that's been going on for almost two decades now!

---

[3] https://www.houstonpublicmedia.org/articles/news/criminal-justice/2024/02/02/476187/state-officials-have-been-reducing-the-harris-county-jails-bed-c%E2%80%A6 .

Complaint

88.     It is evident that Harris County had actual or constructive knowledge of the continued pattern, culture, and custom of constitutional violations at the Harris County Jail to include violence, excessive force, inadequate medical care and denial of medical care.

*Constitutional violation whose moving force is that policy or custom.*

89.     The constitutional rights of a pretrial detainee, like the Plaintiff, flow from the procedural and substantive due process guarantees of the Fourteenth Amendment of the U.S. Constitution. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996); *Valencia v. Wiggins*, 981 F.2d 1440, 1443-45 (5th Cir.), cert. denied, 113 S. Ct. 2998 (1993); *see also Salcido v. Harris Cty.*, 2018 U.S. Dist. LEXIS 169034 *102 (S.D. Tex. 2018) (finding issues of material fact precluded summary judgment on denial of medical care claim); *Wynn v. Harris Cty.*, 556 F. Supp. 3d 645, 655 (S.D. Tex. 2021) (Ellison, K.) (finding that, under the Due Process Clause of the Fourteenth Amendment, Harris County jail pre-trial detainees have a constitutional right to "basic human needs, including medical care and protection from harm").

90.     Indeed, it is well established that, when the State or arm of the State takes a person into custody and holds the person in a jail involuntarily, against its will, the U.S. Constitution imposes upon the State numerous corresponding duties to assume some responsibility for that person's safety and general well-being. Helling v. McKinney, 509 U.S. 25, 31 (1993). The ultimate constitutional duty of the government in those circumstances is to assume some responsibility for the safety and general well-being of persons whose state-occasioned confinement renders them unable to fend for themselves. Hare v. City of Corinth, 74 F.3d 633, 644 (5th Cir. 1996).

*Pattern of Incidents*

91.     Constitutional challenges by pretrial detainees may also be brought under a conditions of confinement theory. Salcido v. Harris Cty., 2018 U.S. Dist. LEXIS 169034 *125 (S.D. Tex. 2018).

Complaint

A conditions of confinement theory would be based on "Harris County's policies, customs, and practices" such that it is an attack on the "general conditions, practices, rules, or restrictions of pretrial confinement." Id., *125. A plaintiff challenging jail conditions needs only demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs. Id. (emphasis added). This pattern may include incidents preceding and succeeding Plaintiff's incident. *Infra*.

92.   Plaintiff has demonstrated the pervasive pattern by incorporating by reference the facts of two related lawsuits in the Southern District;  Cause No. 4:23-cv-02886 and 4:23-cv-04366 and the TCJS reports where it was noted several instances of lack of medical care was provided to detainees. Plaintiff is also aware of constitutional violations suffered by inmates, Oscar Ochoa, Elton Spice, and Joseph Babino, while they were in custody.

### Failure to Train and/or Implement and/or Supervise Proper Policies and Procedures
### By the Harris County Sheriff's Department
### Count II
### 42 U.S.C. § 1983

93.   Plaintiff incorporates by reference the foregoing and succeeding paragraphs as if set forth herein. Prior to May 6, 2022,  Harris County knew or should have known that jailers were providing inadequate medical attention.

94.   Plaintiff would show that Harris County has been aware of the inadequacy of medical attention to inmates due to the DOJ report, the Texas Jailer Commission Reports and the lawsuits brought against Harris County for inadequate medical attention, but has failed to adequately respond and correct the violations.

95.   Defendant Officer Sanders and  other correctional officers at the scene of the incident were acting under color of law and acting pursuant to customs, practices and policies of

the Harris County Sheriff Department regarding the denial of medical care as authorized and/or ratified by the Policymakers, specifically the Harris County Sheriff's Department.

96.     Plaintiff Henry Kmiec was deprived of rights and privileges secured to him by the United States Constitution's Fourteenth Amendment guaranteeing pretrial detainees a right not to have their serious medical needs met with deliberate indifference on the part of the confining officials. The Harris County Sheriff's Department violated Plaintiff's rights by failing to provide proper training, adequate supervision or discipline provide for the health and safety of inmates including but not limited to seeking immediate medical attention for obvious risks of injuries; to check for medical injuries following a fall; and how to report a medical injury or vehicle incident following arrival at the Jail.

97.     With respect to the claims made the basis of this lawsuit, Harris County failed to adequately train its correctional officers in how to provide for the health and safety of inmates including but not limited to: seeking immediate medical attention for obvious risks of injuries; to check for medical injuries following a fall; and how to report a medical injury or vehicle incident following arrival at the Jail. The failure to train its correctional officers in a relevant respect reflects a deliberate indifference of Harris County to the rights of the County Jail's inhabitants and is actionable under 42 U.S.C. § 1983.

98.     Harris County's failure to adequately supervise their correctional officers in the implementation of an adequate policy for its officers on but not limited to seeking immediate medical attention for obvious risks of injuries; to check for medical injuries following a fall; and how to report a medical injury or vehicle incident following arrival at the Jail reflects a deliberate indifference by the Policymakers and reckless and conscious disregard for the obvious risk that correctional officers would fail to provide adequate medical care and made the violations of

Complaint

Plaintiff Henry Kmiec's constitutional rights.

99.     Plaintiff would show that Defendants' actions were the result of, or within the scope of, wrongful and reckless customs, culture, policies, practices and/or procedures for which  Harris County knew or should have known but never provided the requisite and proper training. Harris County had been put on notice by the DOJ report in 2008, the reports by the Texas Jails Commission, lawsuits that have been filed against Harris County, and by internal complaints/grievances made by inmates at the Harris County Jail.

100.     On information and belief, Defendants Harris County, Officer Sanders and UTMB physicians working at the Jail, were acting through official policies, practices, and customs, and with deliberate, callous, and conscious indifference to the constitutional rights of Henry Kmiec and failed to implement and/or enforce the policies, procedures; and practices necessary to provide constitutionally adequate medical attention and assistance to Plaintiff during the incident and implemented policies, procedures, and practices which interfered with or prevented with or prevented Plaintiff from receiving the protection, assistance and care they deserved.

101.     For instance, the following conduct, policies, and customs, inter alia, by Defendants violated Plaintiffs' constitutional rights:

    a.     Harris County's failure to adequately train, supervise or discipline its correctional officers who act with deliberate indifference to the serious medical needs of pre-trial detainees.

    b.     Inadequate staffing to ensure that pre-trial detainees are able to receive needed medical attention for those who have serious medical needs or obvious risk of injuries; and

    c.     Failure to implement policies and procedures and practices to ensure proper medical record keeping of injuries or medical concerns of pre-trial detainees.

102.    UTMB physicians at the Harris County Jail acted with deliberate indifference to the serious medical needs of Plaintiff when they refused to check him for injuries or send him to get imaging despite Plaintiff's complaints of pain and telling nurses and physicians what had occurred in the transport van.

103.    TDCJ violated Plaintiff's Constitutional right to not have his serious medical needs met with deliberate indifference by waiting months after Plaintiff arrived to send him to a specialist for his injuries, despite Plaintiff making them aware of his injuries at intake.

104.    By the time Plaintiff arrive at TDCJ, at least imaging had been conducted on Plaintiff. These images showed serious injuries to Plaintiff's spine, esophagus and shoulders. Yet, after Harris County failed to provide medical treatment for the entirety of his stay, TDCJ  followed their lead and continued to deny Plaintiff access to treatment despite his request for medical care.

**Deliberate Indifference By Defendants (Individually and in their official capacity)**

**COUNT lII**

**42U.S.C.  § 1983**

105.    Plaintiff incorporates by reference the foregoing and succeeding paragraphs as if set forth herein. Plaintiff would show that Defendants' actions on the occasion in question were wrongful, malicious, and reckless in depriving Plaintiff of his constitutional rights, as alleged more fully below.

106.    Plaintiff would show that at all times material hereto, each of the Defendants had a duty to ensure that Plaintiff's serious medical needs were not met with deliberate indifference; and to not trample on his constitutional rights.

107.    Defendant Officer Sanders and other Harris County jailers and physicians acted with deliberate indifference to the serious medical needs of Plaintiff when they refused to

check him for injuries, get images, or tell anyone that Plaintiff had flown out of his wheelchair during transport and the van did not stop and left Plaintiff laying on the floor to continuously hit himself on the van wall and have his wheelchair hit him. Officer Sanders was in the transport van as a passenger and could see Plaintiff on the floor through the cameras. Furthermore, it was Officer Sanders who eventually put Plaintiff back in his wheelchair and locked into place shortly before arriving at the Jail. Plaintiff informed the nurse at the infirmary immediately upon arriving at the Jail about what had happened, but she did not check for injuries and instead just told him to tell the physician. Plaintiff did tell the physician and he repeatedly told Plaintiff he was only there to be seen for his hernia suregery recovery and did not do any further investigation. It was not until almost two months later, after numerous complaints, when Plaintiff's ankle was swollen, that any imaging occurred.

108.     The risk of injury to a person laying on a floor of a vehicle while it is driving, after a hernia surgery and being wheel-chaired bout is obvious to any reasonable person.

109.     Not only did Officer Sanders not provide any medical attention or seek any medical attention, he failed to report the likely injuries. Instead he simply dropped Plaintiff off at the infirmary, putting his medical file on a desk and leaving to clock out for the day.

110.     UTMB staff working at the jail in the medical unit failed to check for injuries even after Plaintiff told them what had happened. Again, the risk that there could be an injury after laying on the floor of a transport van, while having a wheelchair hit you and your upper body hitting a wall, is obvious. Any reasonable person would have at least checked for injuries; akin to getting in a car accident.

111.     Plaintiff would show that Defendants acted with deliberate indifference to the

serious medical needs of Plaintiff in violation of the Fourteenth Amendment to the United States Constitution.

112.   Defendants should have been aware that not providing any medical care or attention to a pre-trial detainee when there's an obvious risk of injury was a constitutional violation as the law has been well established. *See Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001) (citing, *inter alia*, *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)) and *Dyer v. Houston*, 964 F.3d 374 (2020).

113.   Defendants Officer Sanders, Harris County, TDCJ and UTMB intended to cause and caused Plaintiff Elton Spicer to suffer extreme and severe physical, mental, and emotional distress, agony, and anxiety

114.   Harris County is liable because it has established policies and practices which allow officers to act with deliberate indifference to the serious medical needs of the detainees it is in care of, resulting in serious, life-altering injuries and sometimes death.

115.   As a result of these Constitutional violations to Plaintiff and the injuries he sustained, Plaintiff, seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## Failure to Adequately Supervise or Discipline and Ratification
## COUNT IV

116. Plaintiff incorporates by reference the foregoing and succeeding paragraphs as if set forth herein

117. On Plaintiff's governmental liability claim against Harris County

for failing to supervise and/or discipline its correction and detention officers for their violations and the resulting of supervision in the following manners:

   a. Harris County's failure to adequately train, supervise or discipline its correctional officers who act with deliberate indifference to the serious medical needs of pre-trial detainees.

   b. Inadequate staffing to ensure that pre-trial detainees are able to receive needed medical attention for those who have serious medical needs or obvious risk of injuries; and

   c. Failure to implement policies and procedures and practices to ensure proper medical record keeping of injuries or medical concerns of pre-trial detainees.

118. As a direct and proximate result of Harris County's failure to adequately supervise or discipline its correctional officers, Plaintiff has suffered damages.

119. Additionally, and in the alternative, the conduct of Defendants Officer Sanders, UTMB, and TDCJ physicians and medical staff were done with malice. As such, Plaintiff requests punitive and exemplary damages to deter this type of conduct in the future. In the alternative, such heedless and reckless disregard of the Plaintiff's rights, safety, and welfare is more than momentary thoughtlessness, inadvertence, or misjudgment. Such unconscionable conduct goes beyond ordinary negligence, and as such Plaintiffs request punitive and exemplary damages be awarded against Defendant Officer Sanders and UTMB and TDCJ physicians and medical staff in a sum that is within the jurisdictional limits of this court.

## V.
## DAMAGES ALL DEFENDANTS

120.    Plaintiff incorporates by reference the foregoing and succeeding paragraphs as if set forth herein

121.    Defendants' acts and/or omissions were a proximate cause of the injuries to Plaintiffs.

122.    As a direct and proximate result of Harris County, TDCJ, and UTMB's failure to adequately supervise or discipline its correctional officers and medical staff, Plaintiff has suffered damages.

123.    Additionally, and in the alternative, the conduct of Defendant Officer Sanders and the physicians and medical staff of Harris County, TDCJ, and UTMB were done with malice. As such, Plaintiff requests punitive and exemplary damages to deter this type of conduct in the future. In the alternative, such heedless and reckless disregard of Plaintiffs' rights, safety, and welfare are more than momentary thoughtlessness, inadvertence, or misjudgment. Such unconscionable conduct goes beyond ordinary negligence, and as such Plaintiffs request punitive and exemplary damages be awarded against the Defendant in a sum that is within the jurisdictional limits of this court.

## VI.
## DAMAGES ALL DEFENDANTS

124.    Plaintiff incorporates by reference the foregoing and succeeding paragraphs as if set forth herein. Defendants' acts and/or omissions were a proximate cause of the following Injuries suffered by Plaintiff and decedent:

Complaint

a.    Actual damages;

b.    Loss of affection, consortium, comfort, financial assistance, protection, affection, and care;

c.    Pain and suffering and mental anguish suffered by Plaintiff;

d.    Mental anguish and emotional distress suffered by Plaintiff;

e.    Loss of quality of life;

f.    Loss of service;

h.    Loss of future earnings and contributions to Plaintiff;

1.    Exemplary and punitive damages as well as costs of court;

J.    Pursuant to 42 U.S.C. §1988, and other applicable laws, Plaintiff should be awarded reasonable attorney's fees for the preparation and trial of this cause of action, and for its appeal, if required;

k.    Prejudgment interest; and

l.    Post judgment interest.

125.    Plaintiff seeks unliquidated damages in an amount that is within the jurisdictional limits of the court.

## VII.

## COSTS AND ATTORNEY FEES

126.  Plaintiff incorporates by reference the foregoing and succeeding paragraphs as if set forth herein.  Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. § 1 988(b). As such, Plaintiff requests the Court to award costs and attorney fees incurred in Plaintiff's prosecution of this litigation.

## VIII.
## JOINT AND SEVERAL LIABILITY

126.    Plaintiff incorporates by reference the foregoing and succeeding paragraphs as if set forth herein. Plaintiff would show that the Defendants were jointly and severally liable for the gross negligence, which was the proximate cause of Plaintiffs injuries.

## VX.

## CONDITIONS  PRECEDENT

128.    Plaintiff reserves his rights to plead and prove the damages to which he is entitled to at the time of trial. All conditions to Plaintiff's recovery have been performed or have occurred.

## X.

## TRIAL BY JURY

74.    Plaintiff demands trial by jury.

## XI.

## PRAYER

WHEREFORE, PREMISES  CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein; that upon final trial hereof Plaintiff has and recovers judgment from Defendants; actual damages, exemplary damages, pre-judgment interest at the legal rate; interest on said judgment at the legal rate; costs of court; and such other and further relief, both general and special, at law and in equity, to which Plaintiffs are justly entitled.

Respectfully Submitted

T.J. Solomon Law Group, PLLC


By: _Tanika J. Solomon_
Tanika J. Solomon
Texas Bar No. 24057713
Shantelle L. Jones
Texas Bar No. 24136932
S.D. Bar No. 3866430
Email:  attorney@tjsololaw.com
          shantelle@tjsololaw.com
2120 Welch Street
Houston, TX 77019
Tel. (713) 640-5956
Fax. (713) 640-5944
**ATTORNEYS FOR PLAINTIFF**