United States District Court
Southern District of Texas
**ENTERED**
April 09, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HENRY KMIEC., *Plaintiff*, § § § | |
| v. § | CIVIL ACTION NO. 4:24-CV-1932 |
| § | |
| HARRIS COUNTY, HARRIS HEALTH, OFFICER SANDERS *Defendants*. § § § § | |

### ORDER

Pending before the Court is Defendant Harris County's ("Harris County") Rule 12(b)(6) Motion to Dismiss. (Doc. No. 9). Plaintiff filed a Response in opposition, (Doc. No. 19), Harris County filed a reply, (Doc. No. 21), and Plaintiff filed a sur-reply. (Doc. No. 28). Also before the Court is Plaintiff's Motion to Consolidate this case with *Wagner et al. v. Harris Cnty, Tex.*, No. 4:23-cv-2886 (S.D. Tex.) (Ellison, J.). Upon consideration of the law and the arguments, the Court hereby **DENIES** Plaintiff's Motion to Consolidate, (Doc. No. 22), and **GRANTS** Defendant Harris County's Motion to Dismiss. (Doc. No. 9).

### I.   Background

This lawsuit was filed by Plaintiff Henry Kmeic based on the events following a surgery he received while in the custody of the Harris County jail. (Doc. No. 1 at 2). The following facts are taken from the allegations in Plaintiff's Complaint. On May 5, 2022, only seven days after arriving at the Harris County jail, Plaintiff was transported from the jail to the hospital to have a hernia repaired. (*Id.*) The next day, Plaintiff had surgery and was later transported back to the jail by van. (*Id.* at 3). On the drive back, Plaintiff alleges that he was placed in an unsecured wheelchair in the back of the transport van, and he was ultimately injured due to the officers' neglect. (*Id.*).

Based on Plaintiff's Complaint, the two officers transporting him were in a hurry because their shift was supposed to end around the time they were set to arrive at the jail. (*Id.*). According to Plaintiff, the wheels of his chair were neither locked nor secured to the van. (*Id.*). Plaintiff alleges that at some point, the driver was forced to slam on the breaks, and he was thrown from his chair into the wall of the van. (*Id.*). While lying on the floor of the van, Plaintiff alleges that his chair was rolling around freely, and it struck him several times in the head and neck area. (*Id.*). Plaintiff states that, though both officers were in the front seats of the van, they both saw him fall and heard him asking for help but did not stop the van or help him back into his chair. (*Id.*). Plaintiff estimates that he remained on the floor of the van, being occasionally struck in the head and body by his chair, for approximately 20 to 30 minutes. (*Id.* at 4). Finally, when they were about three to five minutes from the jail, the officers pulled the van over, placed him back in the wheelchair, and delivered him to the jail's infirmary without telling the doctors anything about the drive. (*Id.*).

While in the infirmary, Plaintiff complained of extreme neck and shoulder pain as well as pain around the incision point of his hernia surgery. (*Id.* at 4–5). Plaintiff alleges that the infirmary doctor checked his hernia wound but paid no attention to the complaints about his neck and shoulder and did not order an x-ray. (*Id.* at 5). After his discharge from the infirmary, Plaintiff continued to file complaints about the neck and back pain but claims he never received a response. (*Id.*). At some unidentified point in time, Plaintiff did receive pain medication and a walker, but he alleges that he also received a request that he cease filing medical complaints. (*Id.* at 6). Plaintiff states that, because he could not bear to stay in the Harris County jail, he pled guilty to the crime for which he was arrested, and he was transferred to the TDCJ Holliday Unit in Huntsville, Texas. (*Id.* at 7). While in TDCJ's custody, Plaintiff continued to complain of back and neck pain, which was causing trouble swallowing food and water. (*Id.* at 6). Plaintiff alleges that he received no medical treatment in state custody until he met with a mental health counselor who escorted

2

Plaintiff to his medical appointments. (*Id.* at 7). Finally, Plaintiff was sent to a doctor to look at his neck and spine. (*Id.*).

Upon finally received medical attention, approximately six months after the original injury in the van, doctors found that he was suffering from a partially collapsed esophagus and had severe nerve damage cutting off blood flow to his arms and fingers. (*Id.*). Plaintiff underwent surgery in which doctors reconstructed his esophagus, and reconstructed part of his spine (with two plates and two bolts) to relieve some of the pain caused by the pinched nerves. (*Id.* at 7–8).

Now out of TDCJ, Plaintiff complains of permanent nerve damage in his right shoulder that prevents him from writing, eating with utensils, and performing other activities that require raising his arms. (*Id.* at 8). As such, he contends that he is unable to work, and that his life will never resemble his prior life. (*Id.*). Plaintiff alleges that the conduct by employees of the Harris County jail that caused his injuries reflects a pattern or practice deliberate indifference to the medical needs of inmates, using excessive force, failing to protect inmates, and creating a violent environment likely to result in the constitutional violations of the inmates. (*Id.*).

To support these allegations of a pattern or practice, Plaintiff points to several other examples of similar conduct. Plaintiff points to an alleged April 2022 assault of Elton Spicer by officers of the Harris County jail. (*Id.*). Plaintiff also raises the failure of officers to protect Christopher Fears, who was the victim of a violent attack due to the lack of officer oversight in the jail. (*Id.*). Plaintiff raises the claims of excessive force by Harris County guards against D'Alessandro Chavez-Sandoval in February of 2024 as well. (*Id.*). Plaintiff also contends the factual allegations contained in two cases currently before other courts within the Southern District of Texas are significantly overlapping and involve identical questions of law. (*Id.* at 8–9). Those

cases both set forth accusations that Harris County has continually violated the rights of inmates based on the widespread lack of care and attention given to safety and medical care. (*Id.* at 9).[1]

Finally, Plaintiff argues that due to the lawsuits filed regarding the deliberate indifference of Harris County jail employees, Harris County is fully aware of the deficiencies and delays in medical treatment and has intentionally chosen not to remedy the issues. To support this claim, Plaintiff cites a letter from the Texas Commission on Jail Standards placing Harris County on notice that its health services were deficient based on the Commission's investigation. (*Id.* at 10). This letter cited numerous instances throughout 2022 that placed Harris County in non-compliance with the standards required by the State. (*Id.*).[2]

Based on the above, Plaintiff alleges a *Monell* claim against Harris County based on the pattern or practice of ignoring the medical needs of the inmates in violation of their constitutional rights. (*Id.* at 10–17). Additionally, Plaintiff argues that Harris County leadership has violated his constitutional rights by failing to train or supervise guards, sheriffs, or jailers on proper care of the inmates' medical needs. (*Id.* at 17). Finally, Plaintiff alleges that defendant Officer Sanders, in his/her individual capacities, was deliberately indifferent to his constitutional rights. (*Id.* at 20).

Harris County moves to dismiss and makes three primary arguments for dismissal. (Doc. No. 9 at 1–2). First, Harris County argues that the Complaint was filed after the statute of limitations had already run, requiring dismissal of the case. (*Id.*). Second, it argues that Plaintiff

---

[1] *See* 4:23-cv-2886; 4:23-cv-4366. These cases do involve similar challenges to the health services provided in the Harris County jail. Plaintiff's Complaint, however, does not actually include any allegations about the facts of the other cases. Instead, he simply references the cases by name and then states that "[t]he facts of that cause of action and those injuries are incorporated herein." (Doc. No. 1 at 9). This is not a proper method of pleading. Plaintiff must make factual allegations; he cannot simply say that he adopts the allegations of other plaintiffs about other causes of action in other cases.

[2] In preparing for the filing of this suit, Plaintiff contends that he filed an Open Records Request asking for any grievances filed by Plaintiff and the video from inside the transport van from Plaintiff's ride back from the hospital—those records, if they exist, were not provided without explanation. (*Id.*).

failed to adequately plead a cause of action regarding the van accident in light of the Texas Tort Claims Act. (*Id.* at 2). Finally, Harris County argues that Plaintiff failed to adequately plead a civil rights claim under Section 1983. (*Id.*).

## II. Legal Standard

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). Similarly, a plaintiff may file a Rule 12(b)(6) motion to dismiss a counterclaim. *See Kansas v. Nebraska*, 527 U.S. 1020 (1999). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

5

### III. Analysis

#### A. Motion to Consolidate (Doc. No. 22)

Rule 42(a)(2) provides that "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." FED. R. CIV. P. 42(a)(2). Factors for a court to consider in deciding whether consolidation is appropriate include the following: (1) the actions are pending before the same court; (2) there are common parties; (3) there are common questions of law or fact; (4) there is risk of prejudice or confusion if the cases are consolidated, and, if so, whether the risk of inconsistent adjudications of factual and legal issues, if the cases are handled separately, outweighs the risk of prejudice or confusion; (5) consolidation will conserve judicial resources and reduce the time and cost of handling the cases separately; and (6) the cases are at different stages of preparation. *See, e.g., David H. Russell Fam. Ltd. P'ship, LLLP v. Dernick*, No. 4:17-CV-1230, 2018 WL 8733161, at *1 (S.D. Tex. Mar. 7, 2018) (listing the six factors).

Although Rule 42(a)(2) permits consolidation, the rule does not require consolidation, and "[a] court has wide discretion in deciding" whether to consolidate two or more cases. *Id.* at *1 (citing *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 761-62 (5th Cir. 1989)). "Consolidation may properly be denied in instances where the cases are at different stages of preparedness for trial." *Mills*, 886 F.2d at 762; *see also Rimkus Consulting Group, Inc. v. Cammarata*, 2008 WL 5210722, at *2 (S.D. Tex. Dec. 12, 2008) ("The court also considers whether the cases are at different stages of trial preparation."). Further, a motion under Rule 42(a) must be denied "if it would prejudice the rights of the parties." *Raymond v. Ivest Props., LLC*, No. SA-20-CV-00965-FB, 2021 WL 725819, at *2 (W.D. Tex. Feb. 17, 2021) (quoting *St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*, 712 F.2d 978, 989 (5th Cir. 1983)).

Plaintiff's motion is identical to a motion to consolidate in *Wagner* that has already been denied by Judge Ellison. *See* (4:23-cv-2886; Doc. No. 120 at 3–5). The Court finds the reasoning

6

in Judge Ellison's Order persuasive. To start, while the two cases contain some overlapping questions of law and fact, there are also several distinct parties and uncommon questions of law and fact. There is also some risk of prejudice because there are claims made in this case that are not made in the already larger *Wagner* case. Finally, Judge Ellison found that the factor weighing most heavily against consolidation is the fact that the cases are in two very different stages of litigation. Thus, Judge Ellison held that the consolidation would likely complicate and prolong the case in light of the differing procedural postures. (4:23-cv-2886; Doc. No. 120 at 5). This Court agrees with the analysis in the *Wagner* Order and finds that it applies equally to this motion. This case is still at the motion to dismiss stage while the *Wagner* case is well into discovery. The Court therefore **DENIES** Plaintiff's Motion to Consolidate. (Doc. No. 22).[3]

### B. Motion to Dismiss (Doc. No. 9)

The Court finds that Plaintiff's Complaint was timely filed. The Court also finds, however, that Plaintiff has not adequately pled a *Monell* claim against Harris County. As such, the Motion to Dismiss is **GRANTED**. (Doc. No. 9).

### A. *Statute of Limitations*

Plaintiff's Complaint to this Court was timely filed for two reasons. First, the van accident was not the sole basis for Plaintiff's claim for lack of medical care. According to his allegations, Plaintiff was repeatedly denied medical care over the course of the approximately four months that he was in the Harris County jail. Plaintiff contends that the continual denial of that care was a repeating constitutional injury. Harris County argues repeatedly that the van accident was the day that Plaintiff's injury accrued. *See* (Doc. No. 21 at 3). Plaintiff's cause of action, however, is pleaded as a *Monell* claim against Harris County for a pattern or practice of failing to provide

---

[3] The Court notes that this motion was also arguably filed in the wrong court as cases are ordinarily only consolidated into the case with the lowest cause number and it is the judge presiding over that case that makes the consolidation decision. Here, that would be Judge Ellison.

inmates with the health services to which they are entitled. (Doc. No. 1 at 12). While Plaintiff's need for medical care may have begun with the van accident on May 6, 2022, the alleged unconstitutional denial of health services occurred over the course of several weeks following the accident and continued until he was transferred to the TDCJ's Holliday Unit. Plaintiff would not have "sufficient information to know that he [had] been [constitutionally] injured" on May 6 because, according to his Complaint, he had not been unconstitutionally denied medical care at that point. Thus, the Court does not find that May 6, 2022 is the appropriate accrual date for Plaintiff's *Monell* claim.

Nevertheless, even if Plaintiff's constitutional injury accrued on May 6, 2022, Plaintiff's suit would be timely. As there is no federal statute of limitations for civil rights actions brought pursuant to 42 U.S.C. § 1983, a federal court borrows the forum state's general personal injury limitations period. *Owens v. Okure*, 488 U.S. 235, 249–50 (1989); *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992). In Texas, the applicable limitations period is two years. *See* TEX. CIV. PRAC. & REM CODE § 16.003(a) (Vernon 1986).

While Plaintiff's Complaint was not officially docketed until after the Court approved his *in forma pauperis* ("IFP") request on May 15, 2024, (Doc. No. 1), the Complaint and the IFP request itself were filed May 2, 2024. Based on the two-year limitations period, Plaintiff's suit would ordinarily be barred on May 6, 2022. Thus, the question is whether the IFP request, which contained the Complaint per the Southern District of Texas's rules, renders the Complaint timely filed. Based on the Fifth Circuit's precedent on this issue, it does.

The Fifth Circuit has held that a complaint is filed when it is in the actual or constructive possession of the clerk. *Leggett v. Strickland*, 640 F.2d 774, 776 (5th Cir. 1981). Several other circuits have followed *Leggett* and held that the "filing" date, concerning statutes of limitations, is the date that the clerk receives possession of a complaint. *See U.S. v. Dae Rim Fishery Co., Ltd.,*

8

794 F.2d 1392, 1395 (9th Cir. 1986) (refusing to "elevate a local rule . . . to the status of a jurisdictional requirement" which would "conflict with the mandate of Federal Rule of Civil Procedure 1 to provide a just and speedy determination of every action"); *Tucker v. U.S.*, 724 Fed. App'x 754, 757 (11th Cir. 2018) ("[A] complaint is filed for statute of limitations purposes when it is in the actual or constructive possession of the clerk.") (internal citations omitted). Constructive possession of a complaint is also sufficient to survive a statute of limitations challenge even if no filing fee has been paid. *Rodgers on Behalf of Jones v. Bowen*, 790 F.2d 1550, 1552 (11th Cir. 1986), (quoting *Leggett*, 640 F.2d at 776); *see also Wren v. American Cast Iron Pipe Co.*, 575 F.2d 544 (5th Cir. 1978). Since Plaintiff attached his pleading to his IFP request, the Court finds that the Complaint was in the actual possession of the Clerk of the Court on May 2, 2024 and was, therefore, timely filed.

### B. Plaintiff's Monell *Claim*

A municipal entity may be held liable under 42 U.S.C. § 1983 if "an action pursuant to official municipal policy . . . caused a constitutional tort." *Haddock v. Tarrant Cnty., Tex.*, 852 Fed. App'x 826, 833 (5th Cir. 2021) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). A municipal entity "may not be held liable under § 1983 based on *respondeat superior*; the entity cannot be liable simply because its employee harmed someone." *Chavez v. Alvarado*, 550 F. Supp. 3d 439, 455 (S.D. Tex. 2021) (Rosenthal, C.J.). "To state a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must allege that there was either an official policy or an unofficial custom, adopted by the municipality, that was the moving force behind the claimed constitutional violation." *Aguirre v. City of San Antonio*, 995 F.3d 395, 421 (5th Cir. 2021) (citations and internal quotation marks omitted).

In addition, because it is "exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training

9

procedures prior to discovery," "only minimal factual allegations should be required at the motion to dismiss stage." *Thomas v. City of Galveston, Tex.*, 800 F. Supp. 2d 826, 842–43 (S.D. Tex. 2011); *see also Speck v. Wiginton*, 606 F. App'x 733, 735–36 (5th Cir. 2015). Thus, for Plaintiff to survive the motion to dismiss stage, he may show: "(1) past incidents of misconduct by the defendant to others; (2) multiple harms that occurred to the plaintiff himself; (3) the involvement of multiple officials in the misconduct; (4) the specific topic of the challenged policy or training inadequacy," or (5) "misconduct that occurred in the open . . . together with any additional elaboration possible." *Flanagan v. City of Dall., Tex.*, 48 F. Supp. 3d 941, 947 (N.D. Tex. 2014). These examples, however, must display sufficient "similarity and specificity." *Peterson v. City of Ft. Worth*, 588 F.3d 838, 851 (5th Cir. 2009).

Plaintiff has not pleaded any specific written policy that would support his claim. Instead, Plaintiff alleges a pattern or practice of failing to provide medical services to inmates of the Harris County jail to an unconstitutional extent. To start, Plaintiff has alleged, and indeed the law in this circuit recognizes, that the Fourteenth Amendment provides Harris County jail inmates with a right to "basic human needs, including medical care and protection from harm." *See Wynn v. Harris Cnty*, 556 F. Supp. 645, 655 (S.D. Tex. 2021); *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996). While many of Plaintiff's prior conduct allegations are based on distinguishable fact patterns, Plaintiff does include allegations that Harris County has systemically failed to adequately provide medical care to inmates.[4]

In addition to the allegations he makes about his own experience, Plaintiff points to two pieces of evidence to establish a pattern or practice of denying inmates medical care in the Harris County jail. The first is a March 11, 2023 report from the Texas Commission on Jail Standards

---

[4] Plaintiff's references to assault and excessive force cases do not support a *Monell* claim for a failure to provide adequate medical care.

("TCJS") written following an investigation into Harris County jail. This letter includes findings that Harris County, among other things: (1) failed to attend to inmates within 48 hours of their requests, as required by state regulations; (2) failed to escort inmates to their medical appointments; and (3) failed to attend to an inmate who had been shot in the neck for 18 days. (Doc. No. 1 at 10). Based on those findings, the TCJS found that Harris County jail was deficient, required follow-up inspections, and mandated that Harris County create a plan of action. (*Id.*). The second piece of evidence is a report published by the Department of Justice in 2009 regarding the condition of medical care in Harris County jails. (*Id.* at 13–15). While this report does speak directly to certain customs within the Harris County jails, the DOJ report addressed various incidents that occurred over the course of the investigation in 2008–09.

The TCJS report, and Plaintiff's allegations surrounding it, certainly support the proposition that a pattern or practice of deliberate indifference to the medical needs of inmates may have existed at certain times within the Harris County jail. Unfortunately, however, the improper conduct mentioned in that report all occurred *after* Plaintiff's alleged injury. In order to establish municipal liability under *Monell*, the practice or policy alleged must be the "moving force" behind the alleged constitutional violation. *Monell*, 436 U.S. at 694. Thus, the pattern or practice must have existed *before* Plaintiff's injury. Here, Plaintiff's only allegations to support the existence of a pattern or practice occurred *after* his claimed injury. Thus, Plaintiff has not pled sufficient facts to establish that Harris County jail maintained a pattern or practice of denying inmates medical care leading up to, and causing, the denial of *his* medical care.

Similarly, the sixteen-year-old DOJ report also does not adequately support the allegations that Plaintiff's alleged injuries resulted from an unwritten policy. The Complaint essentially recites lines from the report along with conclusions that the same conduct is still happening because the Sheriff has approved it. Plaintiff does not address the fact that there have been several Harris

11

County Sheriffs since the report was published, and the Complaint provides no factual allegations to support the idea that the 2022 policy making official has adopted any unwritten policies that may have existed in 2009. Plaintiff's *Monell* claim is therefore **DISMISSED** without prejudice.

### C. Failure to Train Claim Against Officer Sanders

A "failure to train" claim must be based on an underlying constitutional violation. *Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013). In a § 1983 claim for failure to supervise or train, the plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998); *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brenoettsy*, 158 F.3d at 912 (internal quotation omitted). To establish deliberate indifference, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir.2003) (internal quotation omitted).

Where a plaintiff fails to establish deliberate indifference, the court need not address the other two prongs of supervisor liability. *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 382 (5th Cir. 2005). Furthermore, "for a supervisor to be liable for failure to train, the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (quotations and citation omitted). Moreover, "for liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Id. Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009).

Plaintiff's Complaint does not point to any training programs or allege any probable trainings that were inadequate. Plaintiff does allege a failure of Harris County jail employees to provide him with necessary health services. Plaintiff neither alleges that there was a training program, nor that Harris County had *no* training program. Instead, Plaintiff alleges that a constitutional violation occurred, and its occurrence is evidence that Harris County jail employees were not adequately trained. (Doc. No. 1 at 10). Regardless of whether Plaintiff suffered a constitutional injury, the existence of that injury alone does not establish improper training by Harris County. Thus, Plaintiff's failure to train claim is **DISMISSED** without prejudice.[5]

## IV. Conclusion

Plaintiff's Motion to Consolidate is **DENIED**. (Doc. No. 22). Harris County's Motion to Dismiss is hereby **GRANTED** and Plaintiff's claims against Harris County are **DISMISSED** without prejudice. (Doc. No. 9). Plaintiff's individual-capacity claim against Officer Sanders for deliberate indifference remains live. Further, given that this is Plaintiff's first pleading, the Court finds that equity compels the Plaintiff be given an opportunity to cure these defects. Therefore, Plaintiff may file an amended complaint to replead only his *Monell* claim regarding the alleged denial of medical care, if he does so by May 9, 2025. If a timely amended pleading is filed, Defendants may respond in accordance with the Federal Rules of Civil Procedure.

SIGNED this 7th day of April, 2025.

Andrew S. Hanen
United States District Judge

---

[5] Plaintiff also alleges a "Failure to Adequately Supervise or Discipline and Ratification." (Doc. No. 1 at 22). The Court finds no support for a claim of failure to adequately supervise or discipline that is legally distinct from the failure to train claim. In fact, the Fifth Circuit has articulated the exact same elements for both. *See Goodman*, 571 F.3d at 395 ("In a § 1983 claim for failure to supervise or train, the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."). Thus, to the extent that Plaintiff's "Failure to Adequately Supervise or Discipline and Ratification" claim is a separate claim, it is also **DISMISSED** for lack of supporting factual allegations.